## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KAREN ROBERTS MIXON, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  20-1216** |
| **JAMES POHLMANN, ET AL.,**<br>    **Defendants** | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is a motion to dismiss filed by Defendant CorrectHealth St. Bernard, LLC ("CHSB").[1] Also before the Court is a motion to dismiss filed by Defendants Dr. Phillip Nowlin, PA Juniata Alexander-Sallier, FNP Joyce Brown, LPN Audrey Lewis, LPN Keshonka Rucker, LPN Stefanie Bisesi, LPN Donna Baker, and Jean Llovet (collectively, the "Medical Personnel Defendants").[2] Plaintiffs Karen Roberts Mixon and Lindsey Elaina Mixon filed a consolidated opposition to both motions.[3] CHSB and the Medical Personnel Defendants filed a joint reply.[4] For the following reasons, the motions to dismiss by CHSB and the Medical Personnel Defendants are **GRANTED**.

## BACKGROUND[5]

On October 24, 2019, Edward Mark Mixon was arrested by deputies of the St. Bernard Parish Sheriff's Office and detained in St. Bernard Parish Jail.[6] Four days later, on October 28, 2019, Mixon died while incarcerated.[7] Plaintiffs, Mixon's surviving wife

---

[1] R. Doc. 46.
[2] R. Doc. 47. Jean Llovet was incorrectly identified as Jean Lloret in the first amended complaint, R. Doc. 21, and the second amended complaint, R. Doc. 39.
[3] R. Doc. 48.
[4] R. Doc. 51.
[5] The background facts are taken from the allegations in the second amended complaint. R. Doc. 39.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶ 13.

and daughter, allege Mixon did not receive the appropriate medications or medical care for his various serious medical conditions while incarcerated, despite his requests.[8]

Mixon was a daily user of heroin, taking one to two grams daily.[9] He also suffered from several serious medical conditions, including Chronic Obstructive Pulmonary Disease (COPD), atrial fibrillation (AFib), high blood pressure, and other cardiac problems.[10] Mixon took several prescription medications for his conditions, including Percocet, Xanax, Eliquis, Lisinopril, and Gabapentin.[11]

The St. Bernard Parish Sheriff's Office contracted with CHSB to provide medical and mental health services to prisoners at the St. Bernard Parish Prison.[12] The Medical Personnel Defendants all are CHSB's employees or independent contractors.[13] Mixon was under the Medical Personnel Defendants' care during his incarceration.[14]

On October 24, 2019, the day of Mixon's arrest, LPN Baker conducted his intake screening, which lasted from 3:40 p.m. to 3:54 p.m.[15] Baker did not take Mixon's vital signs, but she documented that Mixon did not appear to be under the influence of or withdrawing from drugs or alcohol.[16] Baker documented Mixon's heroin use, his COPD, and that he had an irregular heartbeat.[17] She also documented the medications Mixon was prescribed and taking.[18] Baker listed the priority of Mixon's appointments as level one, the highest priority.[19] After concluding Mixon's intake screening, Baker placed him in the

---

[8] *Id.* at ¶¶ 7-8, 10-11.
[9] *Id.* at ¶ 14.
[10] *Id.* at ¶¶ 6, 14.
[11] *Id.*
[12] *Id.* at ¶ 3(c).
[13] *Id.* at ¶ 3(d).
[14] *See id.* at ¶¶ 3(c)-(d).
[15] *Id.* at ¶ 14.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at ¶ 20.

prison's general population.[20] That day, Baker ordered Mixon's medications.[21] Sometime that day, Mixon's vital signs were taken, although Plaintiffs do not specify by whom or when, but no medications were reported administered to Mixon.[22]

On October 25, 2019, no medications were reported administered to Mixon, and his vital signs were not taken.[23]

On October 26, 2019, Mixon's vital signs were taken one time, although Plaintiffs do not specify by whom or when.[24] Eliquis and Tudorza Pressair, Mixon's first doses of medication, were administered to him at 8:00 p.m., but again Plaintiffs do not specify by whom.[25] After Mixon's death, Nursing Supervisor Llovet stated Mixon was not given his medications until 8:00 p.m. on October 26 because "it's safe to miss doses due to the concentration of the medication already contained in Mixon's body."[26]

On October 27, 2019, PA Alexander-Sallier checked in the medications LPN Baker had ordered for Mixon.[27] That day, LPN Lewis notified FNP Brown of Mixon's withdrawal symptoms, and Brown ordered that Lewis was to start Mixon on a detox regimen.[28] After Mixon's death on October 28, 2019, Nursing Supervisor Llovet explained it is CHSB nursing protocol that "unless otherwise instructed by a provide [sic], inmates are not

---

[20] *Id.* at ¶ 20.

[21] *Id.* at ¶ 15. Plaintiffs do not specify which of Mixon's medications were ordered. Evidently, the jail had some of the medications in stock, as Mixon was administered several medications before the dates Plaintiffs allege the ordered medications were checked in or approved. *Id.* ¶¶ 15-17.

[22] *Id.* at ¶¶ 16-17. Plaintiffs do not specify the results of Mixon's vitals on this day or any other day his vital signs were taken.

[23] *Id.*

[24] *Id.* at ¶ 17.

[25] *Id.* at ¶¶ 15-16.

[26] *Id.* at ¶ 19. Llovet's explanation is contained in an internal incident report prepared by Detective Sergeant Jessie Gernados, which Plaintiffs quote and reference several times in their second amended complaint.

[27] *Id.* at ¶ 15. Plaintiffs do not explain what "checking in" medication actually entails or why it is a required step. The Court assumes checking in medications means noting they have arrived at the jail. In any event, those details are immaterial to the Court's decision.

[28] *Id.* at ¶ 16.

given detox medications until symptoms arise."[29] Witness #1 confirmed Mixon was given detox medication on October 27.[30] At 8:00 a.m. on October 27 Mixon was administered Eliquis, Potassium, Sotalol, Tudorza Pressair, and Venlafaxine, although Plaintiffs do not allege by whom.[31] At 2:19 p.m. Mixon called his wife and told her "he is sick as a dog and the nurses won't give him a klonopin."[32] He told his wife to "tell the nurses to give him something for nausea."[33] Mixon's wife responded that he should "inform the nurses he is detoxing," but he replied that "they won't help him."[34] At 8:00 p.m., Mixon was administered Atorvastin, Clonazepam, Clonidine, Eliquis Metroclopramide, Sotalol, and Tudorza Pressair, again with no allegation by whom.[35] Sometime that day, Mixon's vital signs were taken, although Plaintiffs again do not specify by whom or when.[36]

Plaintiffs allege, throughout Mixon's incarceration, he was unable to keep his medication down due to nausea and vomiting caused by drug withdrawal.[37] Mixon told Witness #1 that he was vomiting and "detoxing bad," and that he thought Defendants "needed to give him something."[38] Witness #1 confirmed Mixon could not keep his food down and stated the medical staff knew of Mixon's withdrawal symptoms and lack of appetite but waited several days until October 27 to respond to Mixon's request for detox medication.[39]

---

[29] *Id.* at ¶ 19. Llovet's explanation is contained in the internal incident report prepared by Det. Sgt. Gernados, which Plaintiffs have quoted in their second amended complaint.
[30] *Id.* at ¶ 21.
[31] *Id.* at ¶ 16.
[32] *Id.* at ¶ 18.
[33] *Id.*
[34] *Id.*
[35] *Id.* at ¶ 16.
[36] *Id.* at ¶ 17.
[37] *Id.* at ¶ 20.
[38] *Id.*
[39] *Id.*

On October 28, 2019, the day of Mixon's death, Dr. Nowlin approved the medications LPN Baker had ordered for Mixon.[40] Plaintiffs allege that on that morning Defendants did not check on Mixon from midnight to 9:42 a.m.[41] However, Plaintiffs also allege LPN Baker administered Mixon medications that morning at 9:07 a.m.[42] At that time, Baker did not give Mixon all of his medications because she did not realize some of them had come in, and Mixon later had to return to the medication cart to retrieve his missed medications.[43] By 9:15 a.m., back in his cell, Mixon's condition deteriorated, and his body appeared tense, with labored breathing.[44] At 9:17 a.m. Mixon appeared to have stopped breathing.[45] At 9:41 a.m. Mixon was found unresponsive in his cell during a headcount.[46] A code blue was issued, and LPN Baker and RN Biesi arrived at Mixon's cell to respond.[47] Several unspecified deputies and LPNs attempted to revive Mixon with CPR and a defibrillator, but their efforts were unsuccessful.[48] EMS personnel also attempted to revive Mixon for thirty minutes per their protocol, but their efforts also were unsuccessful.[49]

Plaintiffs sue James Pohlmann in his official capacity as Sheriff of St. Bernard Parish, the St. Bernard Parish Sheriff's Office, CHSB, and the Medical Personnel Defendants for compensatory and punitive damages under 42 U.S.C. § 1983 for violations

---

[40] *Id.* at ¶ 15. Plaintiffs do not explain the difference between checking in and approving medications or why either is a required step before the medication can be given to a prisoner. The Court assumes approval means signing off on the administration of the new medications that had been ordered. In any event, those details are immaterial to the Court's decision.

[41] *Id.* at ¶ 24.

[42] *Id.* at ¶ 23. This dose was the last administration of medications Mixon received before his death. However, Plaintiffs also allege medication records paradoxically show Mixon received medication on October 30, 2019, two days after his death. *Id.* ¶ 15.

[43] *Id.* at ¶ 23.

[44] *Id.* at ¶ 25.

[45] *Id.*

[46] *Id.*

[47] *Id.* at ¶ 24.

[48] *Id.* at ¶ 25.

[49] *Id.*

of his Eighth and Fourteenth Amendment right to adequate medical care while detained.[50] Plaintiffs also seek attorneys' fees under 42 U.S.C. § 1988.[51] In addition, Plaintiffs sue Defendants for negligence and intentional torts under Louisiana Civil Code articles 2315, 2315.1, 2315.2, and 2316.[52]

Plaintiffs initially filed their complaint on April 17, 2020.[53] On May 21, 2021, the Court granted Plaintiffs leave to file their first amended complaint in order to add CHSB and the Medical Personnel Defendants as Defendants.[54] CHSB and the Medical Personnel Defendants subsequently filed their first motion to dismiss for failure to state a claim.[55] The Court allowed Plaintiffs to file a second amended complaint to address the arguments made in the first motion to dismiss.[56] Plaintiffs filed their second amended complaint on August 18, 2021,[57] and the Court denied the first motion to dismiss without prejudice on August 24, 2021.[58] CHSB and the Medical Personnel Defendants now move to dismiss Plaintiffs' § 1983 claims against them in the second amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[59] Plaintiffs' § 1983 claims against CHSB and the Medical Personnel Defendants are set forth below.

Plaintiffs allege LPN Baker failed to provide Mixon his constitutionally guaranteed medical care through her deliberate indifference to his medical needs.[60] They allege Baker

---

[50] *Id.* at ¶¶ 4, 55-71.
[51] *Id.* at ¶¶ 60, 62, 72.
[52] R. Doc. 1 at ¶¶ 27-33. Plaintiffs bring their Louisiana law claims in their original complaint. They do not directly restate them in either of their two subsequent amended complaints, but they continue to reference additional claims under the "laws of the State of Louisiana." *See, e.g.*, R. Doc. 39 ¶ 1.
[53] R. Doc. 1.
[54] R. Doc. 20; *see also* R. Doc. 21 (first amended complaint).
[55] R. Doc. 28.
[56] R. Doc. 38.
[57] R. Doc. 39.
[58] R. Doc. 41.
[59] R. Docs. 46, 47.
[60] R. Doc. 39 at ¶¶ 9-11, 25-27.

was aware of some or all of Mixon's medical needs and observed his deteriorating condition but failed to notify Dr. Nowlin, PA Alexander-Sallier, FNP Brown, or an RN of Mixon's condition; failed to give him necessary medications; failed to monitor him; and failed to transfer him to a hospital or other medical facility.[61]

Plaintiffs allege LPN Lewis failed to provide Mixon his constitutionally guaranteed medical care through her deliberate indifference to his medical needs.[62] They allege Lewis was aware of some or all of Mixon's medical needs and observed his deteriorating condition but failed to notify Dr. Nowlin, PA Alexander-Sallier, FNP Brown, or an RN of Mixon's condition; failed to give him necessary medications; failed to monitor him; and failed to transfer him to a hospital or other medical facility.[63]

Plaintiffs allege LPN Rucker failed to provide Mixon his constitutionally guaranteed medical care through her deliberate indifference to his medical needs.[64] They allege Rucker was aware of some or all of Mixon's medical needs and observed his deteriorating condition but failed to notify Dr. Nowlin, PA Alexander-Sallier, FNP Brown, or an RN of Mixon's condition; failed to give him necessary medications; failed to monitor him; and failed to transfer him to a hospital or other medical facility.[65]

Plaintiffs allege RN Bisesi failed to provide Mixon his constitutionally guaranteed medical care through her deliberate indifference to his medical needs.[66] They allege Bisesi was aware of some or all of Mixon's medical needs and observed his deteriorating condition but failed to notify Dr. Nowlin, PA Alexander-Sallier, or FNP Brown of Mixon's

---

[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] R. Doc. 39 at ¶¶ 9-11, 25, 27.

condition; failed to give him necessary medications; failed to monitor him; and failed to transfer him to a hospital or other medical facility.[67]

Plaintiffs allege Nursing Supervisor Jean Llovet failed to provide Mixon his constitutionally guaranteed medical care through her deliberate indifference to his medical needs.[68] They arguably allege Llovet failed to provide Mixon necessary medications for his serious medical needs and enforced a policy depriving Mixon of necessary medications for his serious medical needs.[69]

Plaintiffs allege PA Alexander-Sallier failed to provide Mixon his constitutionally guaranteed medical care through her deliberate indifference to his medical needs.[70] They allege Alexander-Sallier knew of Mixon's detoxing and deteriorating condition but failed to timely prescribe him necessary medications or transfer him to the hospital.[71]

Plaintiffs allege FNP Brown failed to provide Mixon his constitutionally guaranteed medical care through her deliberate indifference to his medical needs.[72] They allege Brown knew of Mixon's detoxing and deteriorating condition but failed to timely prescribe him necessary medications or transfer him to the hospital.[73]

Plaintiffs allege Dr. Nowlin failed to provide Mixon his constitutionally guaranteed medical care through deliberate indifference to his medical needs.[74] They allege Nowlin knew of Mixon's detoxing and deteriorating condition but failed to timely prescribe him

---

[67] *Id.*
[68] *Id.* at ¶¶ 9, 19.
[69] *See id.* Llovet is a named defendant, but Plaintiffs do not directly name Llovet when discussing their claims for deliberate indifference. However, the second amended complaint contains several paragraphs alleging all defendants were deliberately indifferent, *see, e.g.*, *id.* ¶¶ 9-12, 59, and Plaintiffs maintain in their opposition to the instant motions that they brought such a claim against Llovet, R. Doc. 48 at 13-14.
[70] R. Doc. 39 at ¶¶ 9, 21, 24, 27.
[71] *Id.*
[72] *Id.* at ¶¶ 9, 21, 24, 27.
[73] *Id.*
[74] *Id.* at ¶¶ 9, 21, 27.

8

necessary medications or transfer him to the hospital.[75] Plaintiffs also allege Nowlin failed to adequately train and supervise the CHSB medical personnel.[76] They allege Nowlin knew or should have known of the deficiencies in the policies and practices concerning the care and observation of patients in withdrawal, which could not meet the patients' requisite standard of care, and failed to take appropriate steps to make the necessary changes or otherwise ensure that Mixon was given adequate treatment.[77]

Plaintiffs allege that CHSB is vicariously liable for the acts of the Medical Personnel Defendants, who are its employees and independent contractors.[78] Plaintiffs also allege CHSB is liable in its individual and official capacity for its own unconstitutional policies, practices, or customs.[79] They allege CHSB has a custom or practice of not administering medications for serious medical conditions, particularly while patients are detoxing; a custom or practice of placing detoxing individuals in the general population; a custom or practice of not implementing the Clinical Opiate Withdrawal Score (COWS) protocol and other detox protocols; and a custom or practice of withholding medication and medical treatment for serious medical conditions to save money.[80] In addition Plaintiffs allege CHSB failed to adequately train and supervise the Medical Personnel Defendants.[81] Plaintiffs allege CHSB knew or should have known of the deficiencies in the policies and practices concerning the care and observation of patients in withdrawal, and that these policies and practices could not meet patients' standard of care, but failed to take

---

[75] *Id.*
[76] *Id.* at ¶¶ 31-32, 70-71.
[77] *Id.*
[78] *Id.* at ¶ 3(d).
[79] *Id.* at ¶¶ 19, 29, 38, 40, 50, 62.
[80] *Id.* at ¶¶ 19, 29, 38, 40, 50, 62.
[81] *Id.* at ¶¶ 41, 70-71.

appropriate steps, make necessary changes, or otherwise ensure that Mixon was given adequate treatment.[82]

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[83] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[84] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[85] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[86] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[87]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[88] "[W]here the well-pleaded facts do not permit the court to infer

---

[82] *Id.* at ¶¶ 30-32, 38-39.
[83] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[84] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In their motions, CHSB and the Medical Personnel Defendants cite several medical records not referenced in Plaintiffs' second amended complaint. *See* R. Docs. 46, 47. Additionally, Plaintiffs discuss several additional facts in their opposition to CHSB's and the Medical Personnel Defendants' motions not mentioned in the second amended complaint. *See* R. Doc. 48. Because these facts are not included in the allegations in their second amended complaint, the Court will not consider them.
[85] *Iqbal*, 556 U.S. at 678.
[86] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[87] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[88] *Twombly*, 550 U.S. at 555.

more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[89] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[90]

## LAW AND ANALYSIS

"The Eighth Amendment ensures the safety of *convicted prisoners* while due process under the Fourteenth Amendment protects *pretrial detainees*."[91] In this case, Mixon was a pretrial detainee.[92] Nevertheless, "[t]he proper analysis of each category of claims is the same, as [the Fifth Circuit's] 'Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners.'"[93]

A pretrial detainee may prove a constitutional violation by demonstrating either "an unconstitutional condition of confinement" or an "unconstitutional episodic act or omission."[94] These two avenues for § 1983 claims come with separate inquiries.[95] It is evident from the allegations in Plaintiffs' complaint[96] and the arguments in their opposition[97] that Plaintiffs are challenging CHSB's and the Medical Personnel Defendants' episodic acts or omissions in treating, medicating, and monitoring Mixon.[98]

---

[89] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

[90] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).

[91] *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019) (emphasis added) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)).

[92] R. Doc. 39 ¶ 57.

[93] *Baughman*, 935 F.3d at 306 (third alteration in original) (quoting *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019)).

[94] *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020).

[95] *Id.*

[96] *See Walker v. Pohlmann*, No. 20-3464, 2021 WL 2579803, at *2, 5 (E.D. La. June 23, 2021) (treating a complaint challenging CHSB's and its employees' failure to provide necessary medications and failure to adequately monitor a detoxing inmate as "limited to challenging CHSB's and its employee's episodic acts or omissions").

[97] *See, e.g.*, R. Doc. 48 at 7, 9 (arguing CHSB's and the Medical Personnel Defendants' acts constituted deliberate indifference).

[98] *Cf. Hare*, 74 F.3d at 644-45 (differentiating between condition of confinement and episodic act or omission cases).

Accordingly, the Court limits its analysis to the relevant tests for episodic acts or omissions.

In an episodic act or omission case, courts "employ different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue."[99] However, the two tests have overlapping elements.[100] "For the individual defendant, the plaintiff 'must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [the pretrial detainee's] constitutional rights.'"[101] "To establish municipal liability in an episodic-act case, a plaintiff must show '(1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'"[102] The first prong of the municipal liability standard is the same test for subjective deliberate indifference as for individual employee liability.[103]

## I.     Plaintiffs Have Failed to State a Claim Against the Medical Personnel Defendants Individually for Deliberate Indifference.

As explained, to state a claim against an individual defendant in an episodic act or omission case, "the plaintiff 'must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [the pretrial detainee's] constitutional rights.'"[104] "To succeed on a deliberate-indifference claim, plaintiffs must show that (1)

---

[99] *Baughman*, 935 F.3d at 307 (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999)).
[100] *Id.*
[101] *Olabisiomotosho*, 185 F.3d at 526 (quoting *Flores v. Cnty. of Hardeman*, 124 F.3d 736, 738-39 (5th Cir.1997).
[102] *Cadena*, 946 F.3d at 728 (alteration in original) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).
[103] *Baughman*, 935 F.3d at 307.
[104] *Olabisiomotosho*, 185 F.3d at 526 (quoting *Flores v. Cnty. of Hardeman*, 124 F.3d 736, 738-39 (5th Cir.1997).

the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference."[105] "[O]fficial conduct must be 'wanton,' which is defined to mean 'reckless.'"[106] Deliberate indifference "requires that the defendant act with 'something more than mere negligence' but 'less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"[107] "Subjective deliberate indifference 'is an extremely high standard to meet.'"[108] Courts must examine each Defendant's actions individually.[109]

### A. Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim of Deliberate Indifference Against LPN Baker.

Plaintiffs allege LPN Baker was deliberately indifferent to Mixon's medical needs.[110] They allege Baker was aware of some or all of Mixon's medical needs and observed his deteriorating condition but failed to notify Dr. Nowlin, PA Alexander-Sallier, FNP Brown, or an RN of Mixon's condition; failed to give him necessary medications; failed to monitor him; and failed to transfer him to a hospital or other medical facility.[111]

Specifically, Plaintiffs allege, on October 24, 2019, the day of Mixon's arrest, LPN Baker conducted his intake screening, which lasted from 3:40 p.m. to 3:54 p.m.[112] Baker did not take Mixon's vital signs, but she documented that Mixon did not appear to be under the influence of or withdrawing from drugs or alcohol.[113] Baker documented

---

[105] *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2015) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)).

[106] *Baughman*, 935 F.3d at 307 (quoting *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017)).

[107] *Cadena*, 946 F.3d at 728 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)).

[108] *Baughman*, 935 F.3d at 307 (quoting *Domino*, 239 F.3d at 756).

[109] *Id.* at 309 (citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)).

[110] R. Doc. 39 at ¶¶ 9-11, 25-27.

[111] *Id.*

[112] *Id.* at ¶ 14.

[113] *Id.*

Mixon's heroin use, his COPD, and that he had an irregular heartbeat.[114] She also documented the medications Mixon was prescribed and taking.[115] Baker listed Mixon's appointments as level one, the highest priority.[116] After conducting Mixon's intake screening, Baker placed him in the prison's general population.[117] That day, Baker ordered Mixon's medications.[118] On October 28, 2019, the morning of Mixon's death, Plaintiffs allege Baker did not check on Mixon from midnight to approximately 9:42 a.m.[119] However, they also allege Baker administered Mixon medications that morning at 9:07 a.m.[120] At that time, Baker did not give Mixon *all* of his medications because she did not realize some of them had come in, and Mixon later had to return to the medication cart to retrieve his missed medications.[121] After Mixon was found unresponsive in his cell during a headcount that morning at 9:41 a.m. and a code blue was issued, Baker arrived at Mixon's cell to respond.[122]

"For an episodic act claim relying on an alleged denial or delay of medical care, [a plaintiff] can show deliberate indifference by demonstrating that an official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[123] "Mere disagreement with the type, amount, or timing of medical treatment is insufficient."[124] For example, in *Baughman v. Hickman*, the Fifth Circuit held that

---

[114] *Id.*
[115] *Id.*
[116] *Id.* at ¶ 20.
[117] *Id.*
[118] *Id.* at ¶ 15.
[119] *Id.* at ¶ 24.
[120] *Id.* at ¶ 23.
[121] *Id.*
[122] *Id.* at ¶¶ 24-25.
[123] *Baughman*, 935 F.3d at 309 (quoting *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018)).
[124] *Walker*, 2021 WL 2579803, at *8; *see also Baughman*, 935 F.3d at 309 ("A disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference, but the denial

allegations that medical personnel "were aware of [a pretrial detainee's] arrival to the medical unit but did not attend to him" were insufficient to state a claim for deliberate indifference because such delayed treatment is "not the same as alleging the doctors 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[125]

Similarly, in *Dyer v. Houston*, the Fifth Circuit held that allegations that medical personnel should have provided "further assessment or monitoring" to a detainee in an obvious drug-induced psychosis were insufficient to allege deliberate indifference.[126] In that case, after the detainee's arrest but before his transportation to the jail, deputies called paramedics to examine the detainee as he was "exhibiting erratic behavior."[127] The paramedics learned the detainee had ingested LSD and observed him "incoherent and screaming," with a "serious head injury."[128] After examining the detainee, the paramedics concluded he was "not rational and in a drug induced psychosis" but "made no recommendations for further treatment or medical intervention."[129] On the way to the jail, the detainee died after bashing his head against the window of the patrol car over forty times.[130] The court held dismissal was appropriate, reasoning that "not taking further steps to treat [the detainee] after examining him" at most amounted to negligence, not deliberate indifference, as "'the decision whether to provide additional treatment "is

---

of recommended medical treatment is often sufficient to show deliberate indifference." (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018)); *Patterson v. Orleans Par. D.A. Off.*, No. 06-7322, 2008 WL 915447, at *3 (E.D. La. Mar. 31, 2008) ("Contentions that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a § 1983 claim.").

[125] *Baughman*, 935 F.3d at 310 (quoting *Perniciaro*, 901 F.3d at 258).

[126] *Dyer*, 964 F.3d at 380.

[127] *Id.* at 377.

[128] *Id.* at 377-78.

[129] *Id.* at 378.

[130] *Id.* at 377.

a classic example of a matter for medical judgment,'" which fails to give rise to a deliberate-indifference claim."[131]

In *Walker v. Pohlmann*, this Court recently rejected allegations of deliberate indifference nearly identical to those in this case.[132] In that case, a pretrial detainee died in custody five days after his arrest due to Xanax withdrawal.[133] The plaintiffs alleged that, at the detainee's intake screening, the nurse noted his daily use of various drugs, including heroin and Xanax; noted the detainee did not appear to be experiencing withdrawal symptoms at the time; and placed him in general population.[134] On the day of his intake, the detainee was prescribed medications to treat his withdrawal symptoms, which were not approved until two days later.[135] Over the following days, the detainee was administered medications once or twice a day, and his vitals were taken twice his first day in the jail, once each of the next two three, and not at all the day before his death.[136] Throughout his incarceration, the detainee was unable to keep his medications down due to nausea and vomiting, and nurses observed and documented his vomiting.[137] The night before his death, the detainee was administered medications around 10:10 p.m., and he was not checked on for the next eight hours of the night until 6:44 a.m., when a nurse discovered the detainee dangling from his bed, cold and clammy, and "locking up."[138] The detainee died approximately thirty minutes later during an ambulance ride to the hospital.[139] Plaintiffs alleged the defendant doctors "failed to give proper medication best

---

[131] *Id.* at 381 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).
[132] *Walker*, 2021 WL 2579803, at *8. In fact, many of the defendants were the same as well.
[133] *Id.* at *2.
[134] *Id.*
[135] *Id.*
[136] *See id.*
[137] *Id.*
[138] *Id.*
[139] *Id.*

suited to handle Xanax withdrawals and to transfer [the pretrial detainee] to the hospital at an appropriate time."[140] However, this Court reasoned, the allegations did not show the doctors "refused to give [the detainee] medication, or that they ignored him or refused to treat him."[141] Plaintiffs also alleged the defendant nurses "failed to adequately monitor [the pretrial detainee], wrongly allowed him to be placed in general population, and failed to refer him to a doctor or the hospital before his condition became critical."[142] Once again, this Court found the plaintiffs "fail[ed] to allege any facts that suggest[ed] [the nurses] refused to monitor [the pretrial detainee] or that they refused to refer him to a doctor or hospital after they knew his condition had become critical."[143] "At best, the plaintiffs allege[d] that the medical care defendants were negligent in treating Walker's acute withdrawal symptoms or in failing to summon critical care sooner."[144]

As in these cases, the factual allegations against Baker do not rise to the level of deliberate indifference. At Mixon's initial screening, after noting his addiction and medical conditions, Baker promptly ordered his medications and listed any future appointments as high priority. While Baker nevertheless placed Mixon in general population, she did so only after she observed Mixon was not exhibiting symptoms of withdrawal. As in *Walker*, when the detainee was also placed in general population, the factual allegations during Mixon's initial screening fail to show Baker refused to treat Mixon or ignored his conditions, instead alleging at most negligence.[145]

---

[140] *Id.* at *8.
[141] *Id.*
[142] *Id.*
[143] *Id.*
[144] *Id.*
[145] *See id.*

The factual allegations regarding the day of Mixon's death also do not show deliberate indifference. While Plaintiffs allege Baker did not check on Mixon from midnight until the code blue around 9:42 a.m. on the morning of his death, this Court in *Walker* rejected a similar allegation for "fail[ure] to adequately monitor" a pretrial detainee with withdrawal symptoms when nurses did not check on him for over eight hours in the early morning the day he died.[146] In any event, this allegation is contradicted by a separate allegation that Baker administered Mixon his medication at 9:07 a.m. that morning. Although she allegedly forgot to administer some medications because she did not realize they had come in, her mistake shows at most negligence, not a refusal to treat Mixon. Soon after Baker administered medications to Mixon, he began to experience serious withdrawal symptoms that would ultimately lead to his death approximately thirty minutes later. However, Plaintiffs do not allege that Mixon exhibited these symptoms at the time Baker gave him his medications or that she ignored any of his complaints or requests. In fact, Mixon was apparently well enough at the time to able to walk to the medication cart, return to his cell, and then walk back to the cart to receive the medications Baker forgot to give him. Similar to *Baughman* and *Dyer*, the medical judgment not to recommend additional treatments when there is no indication Baker knew Mixon's condition was critical is not the same as a refusal to treat him. Accordingly, Plaintiffs have failed to state a claim for deliberate indifference against Baker, and their § 1983 claims against Baker must be dismissed.

---

[146] *Id.* at *2, 8.

### B.  Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim of Deliberate Indifference Against LPN Lewis.

Plaintiffs allege LPN Lewis was deliberately indifferent to Mixon's medical needs.[147] They allege Lewis was aware of some or all of Mixon's medical needs and observed his deteriorating condition but failed to notify Dr. Nowlin, PA Alexander-Sallier, FNP Brown, or an RN of Mixon's condition; failed to give him necessary medications; failed to monitor him; and failed to transfer him to a hospital or other medical facility.[148] These allegations, however, all are collective allegations against LPNs Baker, Lewis, and Rucker.[149] The only factual allegation specific to Lewis is that she did not notify FNP Brown of Mixon's detox symptoms until October 27, 2019, and only then did Brown order Lewis to start Mixon on a detox regimen.[150]

"Plaintiffs suing governmental officials in their individual capacities, however, must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional [sic] assertions."[151] Moreover, plaintiffs may not lump Defendants together, without specifying separate factual allegations specific to each Defendant, as "referring to the Defendants collectively prevents the Court from drawing the inference that [one individual Defendant] personally (or any other individual Defendant) acted with subjective deliberate indifference."[152] Accordingly, Plaintiffs'

---

[147] R. Doc. 39 at ¶¶ 9-11, 25-27.

[148] *Id.*

[149] *Id.*

[150] *Id.*

[151] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted) (first citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); and then citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)).

[152] *Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 17-656-JWD-EWD, 2018 WL 4517461, at *15 (M.D. La. Sept. 20, 2018) (first citing *Sanchez v. Young Cnty.*, 866 F.3d 274, 281 (5th Cir. 2017); and then citing *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (Jones, J., dissenting)); *see also Phoenix ex rel. S.W. v. Lafourche Par. Gov't*, No. 19-13004, 2020 WL 3269114, at *11 (E.D. La. June 17, 2020) ("Most of the plaintiff's allegations improperly lump the defendants together and fail to allege which

conclusory allegations that lump Lewis in with other Defendants are insufficient to state a claim for deliberate indifference.

Plaintiffs' allegation that Lewis did not inform FNP Brown of Mixon's symptoms until October 27, 2019, also is insufficient to state a claim for deliberate indifference. In *Baughman*, allegations that medical personnel "were aware of [a pretrial detainee's] arrival to the medical unit but did not attend to him" in a timely manner did not rise to the level of deliberate indifference.[153] Similarly, in *Walker*, this Court held that allegations that defendants "failed to give proper medication best suited to handle . . . withdrawals" and "failed to refer him to a doctor or the hospital before his condition became critical" at best rose to the level of negligence and did not reach the standard for deliberate indifference.[154] In *Graham v. Hodge*, the United States District Court for the Southern District of Mississippi held "the thirteen-day delay between [a pretrial detainee] signing a medical authorization and [a nurse] faxing the authorization to the Heart Care Center" may constitute at most negligence, not deliberate indifference.[155]

In this case, as in *Baughman* and *Walker*, Plaintiffs do not allege facts to support an inference that Lewis refused to treat Mixon or ignored his needs. On the contrary, once Lewis recognized Mixon's withdrawal symptoms, she reported them to FNP Brown for further treatment. Plaintiffs do not allege facts to suggest Lewis was aware of Mixon's symptoms before that time, and even if she were, as in *Graham*, a modest delay in treatment would amount to, at most, negligence. Accordingly, Plaintiffs have failed to

---

defendants knew of the substantial risk to [the pretrial detainee] and which defendants failed to take reasonable measures to respond to the substantial risk of suicide.").

[153] *Baughman*, 935 F.3d at 310.

[154] *Walker*, 2021 WL 2579803, at *8.

[155] *Graham v. Hodge*, 69 F. Supp. 3d 618, 628 (S.D. Miss. 2014), *aff'd*, 619 F. App'x 394 (5th Cir. 2015).

state a claim for deliberate indifference against Lewis, and their § 1983 claims against Lewis must be dismissed.

### C.    Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim of Deliberate Indifference Against LPN Rucker.

Plaintiffs allege LPN Rucker was deliberately indifferent to Mixon's medical needs. They allege Rucker was aware of some or all of Mixon's medical needs and observed his deteriorating condition but failed to notify Dr. Nowlin, PA Alexander-Sallier, FNP Brown, or an RN of Mixon's condition; failed to give him necessary medications; failed to monitor him; and failed to transfer him to a hospital or other medical facility.  These allegations, however, all are collective allegations against LPNs Baker, Lewis, and Rucker. Plaintiffs allege no factual allegations specific to Rucker, whether she was aware of Mixon's condition, how she was involved in his care, or otherwise. As explained above, conclusory allegations that lump Rucker in with other Defendants are insufficient to state a claim for deliberate indifference.[156] Accordingly, Plaintiffs' § 1983 claims against Rucker must be dismissed.

### D.    Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim of Deliberate Indifference Against RN Bisesi.

Plaintiffs allege RN Bisesi was deliberately indifferent to Mixon's medical needs.[157] They allege Bisesi was aware of some or all of Mixon's medical needs and observed his deteriorating condition but failed to notify Dr. Nowlin, PA Alexander-Sallier, or FNP Brown of Mixon's condition; failed to give him necessary medications; failed to monitor him; and failed to transfer him to a hospital or other medical facility.[158] These allegations, however, all are collective allegations against RN Bisesi and LPNs Baker, Lewis, and

---

[156] *See Oliver*, 276 F.3d at 741; *Zavala*, 2018 WL 4517461, at *15.
[157] R. Doc. 39 at ¶¶ 9-11, 25, 27.
[158] *Id.*

Rucker. The only factual allegation specific to Bisesi is that she only came to Mixon's cell on October 28, 2019, the morning of his death, to respond to the code blue.[159]

As explained above, conclusory allegations that lump Bisesi in with other Defendants are insufficient to state a claim for deliberate indifference.[160] Plaintiffs' allegation that Bisesi did not check on Mixon on October 28, 2019, from midnight until the code blue at approximately 9:42 a.m. also is insufficient to state a claim for deliberate indifference. In *Dyer*, the Fifth Circuit held that allegations that medical personnel should have provided "further assessment or monitoring" to a detainee in a drug-induced psychosis suggested at most negligence, not deliberate indifference.[161] Similarly, in *Baughman*, allegations that medical personnel "were aware of [a pretrial detainee's] arrival to the medical unit but did not attend to him" in a timely manner did not rise to the level of deliberate indifference.[162] Additionally, in *Walker*, this Court held that allegations that medical personnel "failed to adequately monitor" a pretrial detainee with withdrawal symptoms over the course of three days suggested at best negligence.[163] Analogous to this case, one of the specific allegations in *Walker* was that medical personnel did not monitor the pretrial detainee for a period of eight hours during the night, and he died early the next morning.[164]

As in these cases, Plaintiffs allege no facts to suggest Bisesi refused to monitor Mixon or ignored his condition. In fact, the only allegation concerning Bisesi is that she promptly responded to a code blue. Plaintiffs allege no specific facts to suggest Bisesi was

---

[159] *Id.* at ¶ 24.
[160] *See Oliver*, 276 F.3d at 741; *Zavala*, 2018 WL 4517461, at *15.
[161] *Dyer*, 964 F.3d at 380.
[162] *Baughman*, 935 F.3d at 310.
[163] *Walker*, 2021 WL 2579803, at *8.
[164] *Id.* at *2.

aware of Mixon's rapidly deteriorating condition before then, and even if she were, a failure to monitor Mixon during one night would at best amount to negligence. Accordingly, Plaintiffs have failed to state a claim for deliberate indifference against Bisesi, and their § 1983 claims against Bisesi must be dismissed.

### E.   Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim of Deliberate Indifference Against Nursing Supervisor Llovet.

Plaintiffs allege Nursing Supervisor Jean Llovet was deliberately indifferent to Mixon's medical needs.[165] They arguably allege Llovet failed to provide Mixon necessary medications for his serious medical needs and enforced a policy depriving Mixon of necessary medications for his serious medical needs.[166] The only mentions of Llovet in the second amended complaint are her statements to an investigator after Mixon's death that "it's safe to miss doses due to the concentration of the medication already contained in Mixon's body" and "per their nursing protocol unless otherwise instructed by a provide [sic], inmates are not given detox medications until symptoms arise."[167] However, Plaintiffs do not allege Llovet was in any way personally involved with Mixon's care or that she implemented or enforced these policies in regard to Mixon's care. As explained above, conclusory allegations that lump Llovet in with other Defendants are insufficient to state a claim for deliberate indifference.[168] Accordingly, Plaintiffs have failed to state a claim for deliberate indifference against Llovet, and their § 1983 claims against Llovet must be dismissed.

---

[165] R. Doc. 39 at ¶¶ 9, 19.
[166] *See id.*
[167] *Id.* at ¶ 19.
[168] *See Oliver*, 276 F.3d at 741; *Zavala*, 2018 WL 4517461, at *15.

### F.   Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim of Deliberate Indifference Against PA Alexander-Sallier.

Plaintiffs allege PA Alexander-Sallier was deliberately indifferent to Mixon's medical needs.[169] They allege Alexander-Sallier knew of Mixon's detoxing and deteriorating condition but failed to timely prescribe him necessary medications or transfer him to the hospital.[170] These allegations, however, all are collective allegations against Alexander-Sallier, FNP Brown, and Dr. Nowlin.[171] The only factual allegation specific to Alexander-Sallier is that she did not check in the medications LPN Baker had ordered for Mixon until October 27, 2019.[172]

As explained above, conclusory allegations that lump Alexander-Sallier in with other Defendants are insufficient to state a claim for deliberate indifference.[173] Plaintiffs' allegation that Alexander-Sallier did not check in Mixon's medications until October 27, 2019, also is insufficient to allege deliberate indifference. In this case, Plaintiffs allege no facts to suggest Alexander-Sallier knew of Mixon's condition, and they do not allege his medication was available to be checked in before October 27. Even if Alexander-Sallier did know the medication was ready to be checked in, a short delay in treatment does not establish she refused to treat Mixon or ignored his needs. In *Baughman*, allegations that medical personnel "were aware of [a pretrial detainee's] arrival to the medical unit but did not attend to him" in a timely manner did not rise to the level of deliberate indifference.[174] In *Walker*, allegations of a failure to give provide a pretrial detainee the medications necessary to treat withdrawal and failure to adequately monitor and treat

---

[169] R. Doc. 39 at ¶¶ 9, 21, 24, 27.
[170] *Id.*
[171] *Id.*
[172] *Id.* at ¶ 15.
[173] *See Oliver*, 276 F.3d at 741; *Zavala*, 2018 WL 4517461, at *15.
[174] *Baughman*, 935 F.3d at 310.

him—including the specific allegation that necessary medications were not approved for two days—did not rise to the level of deliberate indifference.[175] Similarly, in *Graham*, the court held a "thirteen-day delay" in sending authorization for medical treatment amounted to at most negligence, not deliberate indifference.[176] Accordingly, Plaintiffs have failed to state a claim for deliberate indifference against Alexander-Sallier, and their § 1983 claims against Alexander-Sallier must be dismissed.

### G.    Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim of Deliberate Indifference Against FNP Brown.

Plaintiffs allege FNP Brown was deliberately indifferent to Mixon's medical needs.[177] They allege Brown knew of Mixon's detoxing and deteriorating condition but failed to timely prescribe him necessary medications or transfer him to the hospital.[178] These allegations, however, all are collective allegations against PA Alexander-Sallier, Brown, and Dr. Nowlin.[179] The only factual allegation specific to Brown is that she did not approve Mixon for detox treatment until  October 27, 2019, when LPN Lewis informed her of Mixon's symptoms.[180]

As explained above, conclusory allegations that lump Brown in with other Defendants are insufficient to state a claim for deliberate indifference.[181] Plaintiffs' allegation that Brown did not approve Mixon for detox treatment until  October 27, 2019, also is insufficient to state a claim for deliberate indifference. In *Dyer*, the Fifth Circuit held that "not taking further steps to treat [the detainee] after examining him" at most

---

[175] *Walker*, 2021 WL 2579803, at *2, 8.
[176] *Graham*, 69 F. Supp. 3d at 628.
[177] R. Doc. 39 at ¶¶ 9, 21, 24, 27.
[178] *Id.*
[179] *Id.*
[180] *Id.* at ¶ 16.
[181] *See Oliver*, 276 F.3d at 741; *Zavala*, 2018 WL 4517461, at *15.

amounted to negligence, not deliberate indifference, as "'the decision whether to provide additional treatment "is a classic example of a matter for medical judgment,"' which fails to give rise to a deliberate-indifference claim."[182] In *Walker*, this Court held the allegation that doctors "failed to give proper medication best suited to handle Xanax withdrawals" did not show the doctors "refused to give [the detainee] medication, or that they ignored him or refused to treat him." In *Graham*, the court held a "thirteen-day delay" in sending authorization for medical treatment amount to at most negligence, not deliberate indifference.[183]

In this case, Plaintiffs allege no facts to show that Brown was aware of Mixon's withdrawal symptoms until October 27 when LPN Lewis informed her, and when Brown did become aware, she promptly ordered Mixon be placed on a detox regimen. Moreover, as in *Dyer* and *Walker*, any inadequacies in this regimen show at most negligence, not a refusal to treat Mixon sufficient to establish deliberate indifference. Even if Brown were aware of Mixon's symptoms earlier, as in *Graham*, a short delay in treatment is not the same as refusing to treat Mixon and would amount, at most, to negligence, not deliberate indifference. Accordingly, Plaintiffs have failed to state a claim for deliberate indifference against Brown, and their § 1983 claims against Brown must be dismissed.

**H.   Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim of Deliberate Indifference Against Dr. Nowlin Based on Failure to Prescribe Medications or Transfer Mixon to the Hospital.**

Plaintiffs allege Dr. Nowlin was deliberately indifferent to Mixon's medical needs.[184] They allege Nowlin knew of Mixon's detoxing and deteriorating condition but

---

[182] *Id.* at 381 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).
[183] *Graham*, 69 F. Supp. 3d at 628.
[184] R. Doc. 39 at ¶¶ 9, 21, 27.

failed to timely prescribe him necessary medications or transfer him to the hospital.[185] These allegations, however, all are collective allegations against PA Alexander-Sallier, FNP Brown, and Dr. Nowlin.[186] The only factual allegation specific to Dr. Nowlin is that he did not approve the medications ordered by LPN Baker until October 28, 2019.[187]

As explained above, conclusory allegations that lump Dr. Nowlin in with other Defendants are insufficient to state a claim for deliberate indifference.[188] Plaintiffs' allegation that Dr. Nowlin did not approve Mixon's ordered medications until October 28, 2019, also is insufficient to state a claim for deliberate indifference. In this case, Plaintiffs allege no facts to suggest Dr. Nowlin knew of Mixon's condition or that he knew Mixon's medication was available to be approved before October 28. In any event, the medication was only checked in by PA Alexander-Sallier on October 27, the day before. Even if Dr. Nowlin did know the medication was ready to be approved, a short delay in treatment does not establish he refused to treat Mixon or ignored his needs. In *Baughman*, allegations that medical personnel "were aware of [a pretrial detainee's] arrival to the medical unit but did not attend to him" in a timely manner did not rise to the level of deliberate indifference.[189] In *Walker*, this Court held that allegations of a failure to provide a pretrial detainee the medications necessary to treat withdrawal and failure to adequately monitor and treat him—including the specific allegation that medications were not approved for two days—did not rise to the level of deliberate indifference.[190]

---

[185] *Id.*

[186] *Id.*

[187] *Id.* at ¶ 15.

[188] *See Oliver*, 276 F.3d at 741; *Zavala*, 2018 WL 4517461, at *15.

[189] *Baughman*, 935 F.3d at 310; *see also Walker*, 2021 WL 2579803, at *8 (holding the allegation that doctors "failed to give proper medication best suited to handle Xanax withdrawals" did not show the doctors "refused to give [the detainee] medication, or that they ignored him or refused to treat him").

[190] *Walker*, 2021 WL 2579803, at *2, 8.

Similarly, in *Graham*, the court held a "thirteen-day delay" in sending authorization for medical treatment amounted to at most negligence, not deliberate indifference.[191] Accordingly, Plaintiffs have failed to state a claim for deliberate indifference against Dr. Nowlin, and their § 1983 claims against Dr. Nowlin must be dismissed.

## II.   Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim of Supervisory Liability Against Dr. Nowlin.

Plaintiffs also allege Nowlin failed to adequately train and supervise the CHSB medical personnel.[192] They allege Nowlin knew or should have known of the deficiencies in the policies and practices concerning the care and observation of patients in withdrawal, which could not meet patients' standard of care, and failed to take appropriate steps, make the necessary changes, or otherwise ensure that Mixon was given adequate treatment.[193]

"A supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[194] "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates."[195] "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of

---

[191] *Graham*, 69 F. Supp. 3d at 628.
[192] R. Doc. 39 at ¶¶ 31-32, 70-71.
[193] *Id.*
[194] *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (citing Baker v. Putnal, 75 F.3d 190, 199 (5th Cir.1996)).
[195] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alterations in original) (quoting *Gates*, 537 F.3d at 435).

constitutional rights."[196] In addition, "[t]o succeed on a failure to train claim, a plaintiff must show that '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'"[197] "[A]n underlying constitutional violation is required to impose . . . supervisory liability on . . . individuals."[198] Because Plaintiffs have failed to allege underlying constitutional violations against any of the Medical Personnel Defendants, whom Dr. Nowlin allegedly supervised, Plaintiffs have failed to allege a claim against Dr. Nowlin for failure to supervise or train.

### III.   Plaintiffs Have Failed to Allege Sufficient Facts to Support Claims for Punitive Damages Against the Medical Personnel Defendants under § 1983.

Plaintiffs seek punitive damages from the Medical Personnel Defendants.[199] Punitive damages are available "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[200] In *Walker*, this Court dismissed a claim for punitive damages when Plaintiffs alleged the defendant doctors "failed to give proper medication best suited to handle Xanax withdrawals and to transfer [the pretrial detainee] to the hospital at an appropriate time" and the defendant nurses "failed to adequately monitor [the pretrial detainee], wrongly allowed him to be placed in general population, and failed to refer him to a doctor or the hospital before his condition

---

[196] *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).
[197] *Gates*, 537 F.3d at 435 (quoting *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir.2005)).
[198] *Baughman*, 935 F.3d at 311 (citing *Brumfield v. Hollins*, 551 F.3d 322, 327-29, 331-32 (5th Cir. 2008)).
[199] R. Doc. 39 at ¶ 72(E).
[200] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

became critical."[201] The Court found "there are no factual allegations indicating that any defendant was motivated by evil motive or intent."[202] Similarly, in this case, Plaintiffs have alleged no facts to support the notion that the Medical Personnel Defendants were motivated by evil motive or intent. Accordingly, their claims for punitive damages from the Medical Personnel Defendants must be dismissed.

## IV.   Plaintiffs Have Failed to State a Claim Against CHSB.

"The standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function."[203] As a private entity that acts under color of state law in contracting with the municipality to provide medical services to detainees, CHSB is treated as a municipality for the purposes of § 1983 claims.[204]

### A.   There Is No Vicarious Liability under § 1983 for a Private Company Treated as a Municipal Entity Such as CHSB.

Plaintiffs allege CHSB is vicariously liable for the acts of the Medical Personnel Defendants.[205] In *Monell v. Department of Social Services of New York*, the Supreme Court held "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[206] Rather, "a municipality can be found liable under § 1983 only where the

---

[201] *Walker*, 2021 WL 2579803, at *8, 9 n. 11.

[202] *Id.* at *9 n.11.

[203] *Olivias v. Corr. Corp. of Am.*, 408 F. Supp. 2d 251, 254-55 (N.D. Tex. 2006) (applying *Monell v. New York City Department of Social Services* to a private prison), *aff'd*, 215 F. App'x 332 (5th Cir. 2007); *see also Phillips v. Corr. Corp. of Am.*, No. 02-0766., 2006 WL 1308142, at *3 (W.D. La. May 10, 2006); *Walker*, 2021 WL 2579803, at *9 ("As a private entity that acts under color of state law in contracting with the municipality to provide medical services to detainees, CHSB is treated as a municipality for the purposes of § 1983 claims."); *cf. also Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). The Circuits to have considered the issue agree that, where private entities act in the place of a municipality, *Monell* applies. *See, e.g.*, *Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 786 (7th Cir. 2014); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012); *Lyons v. Nat'l Car Rental Sys., Inc.*, 30 F.3d 240, 246 (1st Cir. 1994); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).

[204] *Walker*, 2021 WL 2579803, at *9.

[205] R. Doc. 39 ¶

[206] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).

municipality *itself* causes the constitutional violation at issue."[207] This rule applies equally to a private entity performing a government function such as CHSB.[208] Therefore, Plaintiffs' claims against CHSB for vicarious liability under § 1983 must be dismissed.

### B. The Application of § 1983 Municipal Liability to a Private Entity Is Distinct from the Issue of Capacity.

Plaintiffs sue CHSB, a private entity, in its official and individual capacities.[209] CHSB argues the Supreme Court in *Monell* made clear that only official capacity claims may be brought against a municipal entity such as CHSB.[210] However, *Monell* did not address capacities; it held only that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." It makes sense not to identify the capacity in which a defendant is acting when the defendant is a government entity, as "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent,'" while "[p]ersonal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law."[211] However, when applying the rule from *Monell* to a private company such as CHSB, the question of capacity is less clear, and courts have wrestled with the issue.[212]

---

[207] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

[208] *See, e.g.*, *Walker*, 2021 WL 2579803, at *9; *Olivias*, 408 F. Supp. 2d at 255

[209] R. Doc. 39 at ¶ 3(c).

[210] R. Doc. 46-1 at 3.

[211] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991)

[212] *See, e.g.*, *Groom v. Safeway, Inc.*, 973 F. Supp. 987, 992 n. 5 (W.D. Wash. 1997) ("The distinction between official-capacity/municipal and individual-capacity actions that arises in the context in which a public entity is being sued is yet another illustration of how case law from that context does not fit where the defendant is a private corporation. Should Safeway have been held liable in its 'individual' or its 'official' capacity? It would seem clear that Safeway, as a private employer, has no 'official'-capacity, or 'municipal,' liability, and yet the 'rule' against holding Safeway vicariously liable for its employee's actions is borrowed from the official-capacity/municipal liability context, in which a plaintiff seeks to hold a public entity liable for the actions of its employees. . . . In any event . . . Plaintiff's theory could have supported a finding of liability under either the individual-capacity standard, on which the jury was instructed, or under the standard for official-capacity/municipal liability, which requires a policy or custom that causes the harm."); *see also* Barbara Kritchevsky, *Civil Rights Liability of Private Corporations*, 26 Cardozo L. Rev. 35, 71 n.

The recent approach has been to treat the application of § 1983 municipal liability to a private entity as distinct from the issue of capacity. In *Davison v. Rios*, the "Plaintiff name[d] Defendant CCS in its individual and official capacities."[213] However, the court reasoned, "CCS is a private entity and lacks a traditional individual or official capacity;" instead, "a party may sue Defendant CCS for municipal liability."[214] In *Mitchell v. GEO Group, Inc.*, the court similarly held while "Plaintiff seeks liability against Defendant GEO in both its individual and official capacities[,] . . . as a private entity, GEO lacks a traditional individual or official capacity."[215] "Even so," the court held, "Defendant GEO may be sued under a theory of municipal liability."[216]

Other courts have come to the same result without explicitly stating their reasoning. In *Sims v. Wexford Health*, the plaintiff sued all defendants, including the private company Wexford Health, "in their individual and official capacities."[217] In addressing Wexford Health's liability, the court simply stated, "Wexford is treated as a government entity for purposes of Section 1983 claims."[218] Similarly, in *Fields v. Trinity Food Service*, the plaintiff sued all defendants, including the private companies CoreCivic and Trinity Food Service, "in their individual and official capacities," but in addressing CoreCivic's and Trinity Food Service's liability, the court simply stated courts have

---

250 (2004) ("[The distinction between official and individual capacity suits that was important in municipal liability law 'is yet another illustration of how case law from that context does not fit where the defendant is a private corporation.' . . . It appears that no court has actually used capacity analysis in determining the liability of a private corporation." (quoting *Groom*, 973 F. Supp. at 992 n. 5)).

[213] *Davison v. Rios*, No. CIV-16-374-HE, 2017 WL 9477746, at *2 (W.D. Okla. Feb. 2, 2017), *report and recommendations adopted*, No. CIV-16-374-HE, 2017 WL 1843308 (W.D. Okla. May 5, 2017).

[214] *Id.*

[215] *Mitchell v. GEO Grp., Inc.*, No. CIV-19-40-G, 2019 WL 4923986, at *2 (W.D. Okla. Apr. 10, 2019), *report and recommendations adopted*, No. CIV-19-40-G, 2019 WL 4918775 (W.D. Okla. Oct. 4, 2019).

[216] *Id.*

[217] *Sims v. Wexford Health*, No. 1:19-cv-01030-TWP-TAB, 2019 WL 2514832, at *1 (S.D. Ind. June 17, 2019).

[218] *Id.*

"applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners."[219]

This approach, treating the question of municipal liability as separate from the question of in which capacity the private corporation is acting, is consistent with the way the Fifth Circuit has treated § 1983 claims: "Claims under § 1983 may be brought against persons in their individual or official capacity, *or against a governmental entity*."[220] In fact, the Fifth Circuit in *Baughman* recently analyzed a claim against a county, nominally in its individual and official capacities, the same as any other municipal liability claim.[221] The plaintiff alleged "the County, Dr. Guice [the jail's executive director of health services], and Sheriff Hickman are liable 'in their Official Capacities and Individual Capacities.'"[222] However, in addressing these claims, the court simply stated, "These claims, whether seeking official or individual liability, require Baughman to connect the existence of a policy, widespread and settled practice, or a failure to train to a constitutional violation."[223]

---

[219] *Fields v. Trinity Food Servs.*, No. 17-1190-JDT-cgc, 2019 WL 5268565, at *2, 5 (W.D. Tenn. Oct. 17, 2019)

[220] *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (emphasis added). Another approach courts have taken to the issue of private company capacity under § 1983 is to treat municipal liability as an "individual capacity" theory. *See, e.g.*, *Brown v. Taylor*, No. EP-13-CV-00017-FM, 2017 WL 11449893, at *5 (W.D. Tex. Sept. 13, 2017) ("Additionally, although ostensibly suing the Avalon Defendants in their official capacities, these Defendants consist of a private corporation and private individuals. Private corporations and individuals do not have 'official capacities' for purposes of § 1983."); *Smith v. Aramark Corp.*, No. 1:20-cv-00393-JPH-DML, 2020 WL 1433864, at *2 n. 1 (S.D. Ind. Mar. 23, 2020) (alterations in original) (citations omitted) ("Mr. Smith seeks to sue each defendant in his or her individual and official capacities. However, '[o]fficial capacity suits, . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent."' '[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.' Thus, the official capacity claims are dismissed." (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985))); *Atkins v. CoreCivic, Inc.*, No. 3:21-cv-00103, 2021 WL 4773080, at *3 & n.3 (M.D. Tenn. Oct. 12, 2021) (first alteration in original) ("The FAC specifically states that '[a]ll defendants are sued in their individual and official capacities.' . . . That statement makes no sense, insofar as it applies to CoreCivic (or Hardeman County), because entities cannot be sued in a representative capacity."). However, this approach conflicts with how the Fifth Circuit classifies municipal liability separately from individual and official capacity claims. *See Goodman*, 571 F.3d at 395.

[221] *Baughman*, 935 F.3d at 311.

[222] *Id.*

[223] *Id.*

For these reasons, the Court will not label Plaintiffs' claims against CHSB as individual or official capacity claims. Such a label is unhelpful; the practical result of Plaintiffs' § 1983 claims against a private entity such as CHSB that performs a traditional government function is that the rules for municipal liability under *Monell* apply.

### C. Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim for Policy or Practice Liability Against CHSB.

Plaintiffs allege CHSB is liable for its own unconstitutional policies, practices, or customs.[224] As explained, "[t]o establish municipal liability in an episodic-act case, a plaintiff must show '(1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'"[225] The first prong of the municipal liability standard is the same test for subjective deliberate indifference as for individual employee liability, and such "an underlying constitutional violation is required to impose liability on the governmental body."[226] Plaintiffs allege CHSB's liability flows from the deliberate indifference of the Medical Personnel Defendants.[227] However, as explained above, Plaintiffs have failed to state an underlying claim against any of the Medical Personnel Defendants for deliberate indifference. Accordingly, Plaintiffs' claims against CHSB for municipal policy or practice liability must be dismissed.

---

[224] R. Doc. 39 at ¶¶ 19, 29, 38, 40, 50, 62.
[225] *Cadena*, 946 F.3d at 728 (alteration in original) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).
[226] *Baughman*, 935 F.3d at 307, 311; *see also Olabisiomotosho*, 185 F.3d at 528-29; *Walker*, 2021 WL 2579803, at *10.
[227] R. Doc. 39 at ¶ 62.

### D. Plaintiffs Have Failed to Allege Sufficient Facts to Support a Claim for Supervisory Liability Against CHSB.

Plaintiffs also allege CHSB failed to adequately train and supervise the Medical Personnel Defendants.[228] "To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question."[229] Similarly, "for a plaintiff to succeed against a municipality on a failure-to-supervise claim, the complaint must allege facts that plausibly establish "(1) the supervision policies of the municipality were inadequate, (2) the municipality was deliberately indifferent in adopting such polices, and (3) the inadequate-supervision policies directly caused the plaintiff's injuries."[230] "[I]nadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."[231] Plaintiffs allege CHSB's liability flows from the deliberate indifference of the Medical Personnel Defendants.[232] However, as explained above, Plaintiffs have failed to state an underlying claim against any of the Medical Personnel Defendants for deliberate indifference. Accordingly, Plaintiffs' claims against CHSB for failure to train or supervise must be dismissed.

---

[228] *Id.* at ¶¶ 41, 70-71.

[229] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (citing *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009)).

[230] *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 597 (W.D. Tex. 2020) (quoting *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 656 (N.D. Tex. 2018) (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

[231] *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) (citing *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010)); *cf. Baughman*, 935 F.3d at 307, 311 (dismissing a failure to supervise claim against individuals because of the lack of an underlying constitutional violation). Failure-to-supervise claims are governed by the same deliberate-indifference standard regardless of whether they are based on municipal liability or individual supervisory liability. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994); *see also Malone*, 297 F. Supp. 3d at 656.

[232] R. Doc. 39 at ¶ 70.

### E.    Punitive Damages Are Not Available Against a Private Entity Such as CHSB Performing a Traditional Governmental Function.

Plaintiffs seek punitive damages from CHSB.[233] CHSB argues punitive damages are not available against private companies treated as municipal entities, citing recent cases from the United States District Court for the Western District of Louisiana and the United States District Court for the Middle District of Louisiana.[234] Plaintiffs argue the Fifth Circuit has not addressed this issue, and because one of the district court opinions CHSB cites is on appeal, this Court should not follow suit.[235]

In *City of Newport v. Fact Concerts, Inc.*, the Supreme Court held that punitive damages were not available against a municipality for several reasons.[236] First, allowing punitive damages against a municipality would harm innocent taxpayers "because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised."[237] Second, punitive damages typically seek "to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct," but this purpose breaks down when punitive damages are sought against an entity rather than an individual because a "municipality . . . can have no malice independent of the malice of its officials."[238] Finally, the deterrent purpose of § 1983 would not be advanced by assessing punitive damages against a municipality, when that purpose could be satisfied fully by assessing those damages against the individuals who may have committed the constitutional violations at issue.[239]

---

[233] *Id.* at ¶ 72.
[234] R. Doc. 46-1 at 9-10.
[235] R. Doc. 48 at 15-16.
[236] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).
[237] *Id.* at 263.
[238] *Id.* at 266-67.
[239] *Id.* at 669-70.

Two district courts in this Circuit have extended the reasoning of *City of Newport* to private entities performing government functions. In *Moore v. LaSalle Corrections, Inc.*, the Western District of Louisiana, faced with an issue of first impression, held that the Supreme Court's reasons for denying punitive damages against a municipality compel the same result for a private entity which has assumed a traditionally governmental role.[240] Considering the nature of the private prison industry, awarding punitive damages against a private prison would harm the public because "that award, and the threat of future punitive damage awards, necessarily increases the costs of maintaining that agreement."[241] "Further, just like a municipality, a private entity like LaSalle is incapable of malicious action outside of its employees," and "[j]ust like a municipality, a company has employees against whom the deterrent purpose of § 1983 may be actually effective."[242] Faced with the same issue of § 1983 punitive damages claims against a private company, the Middle District of Louisiana in *Carter v. Gautreaux*, citing *Moore*, held "punitive damages are not available in this case."[243]

The Court finds the reasoning in *Moore* persuasive. For the reasons stated therein, punitive damages are not available against a private entity such as CHSB performing the traditional governmental function of operating the medical facilities of a prison. Plaintiffs' claims for punitive damages against CHSB must be dismissed.

---

[240] *Moore v. LaSalle Corr., Inc.*, 429 F. Supp. 3d 285, 289 (W.D. La. 2019), *appeal filed*, No. 20-30739 (5th Cir. Nov. 24, 2020).
[241] *Id.*
[242] *Id.*
[243] *Carter v. Gautreaux*, No. 19-105-SDD-EWD, 2021 WL 2785332, at *6 (M.D. La. July 2, 2021).

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss[244] filed by Defendant CorrectHealth St. Bernard, LLC is **GRANTED**. Plaintiffs Karen Roberts Mixon's and Lindsey Elaina Mixon's claims against CorrectHealth St. Bernard, LLC under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion to dismiss[245] filed by Defendants Dr. Phillip Nowlin, PA Juniata Alexander-Sallier, FNP Joyce Brown, LPN Audrey Lewis, LPN Keshonka Rucker, LPN Stefanie Bisesi, LPN Donna Baker, and Jean Llovet is **GRANTED**. Plaintiffs Karen Roberts Mixon's and Lindsey Elaina Mixon's claims against Dr. Phillip Nowlin, PA Juniata Alexander-Sallier, FNP Joyce Brown, LPN Audrey Lewis, LPN Keshonka Rucker, LPN Stefanie Bisesi, LPN Donna Baker, and Jean Llovet under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**. [246]

**New Orleans, Louisiana, this 23rd day of December, 2021.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[244] R. Doc. 46.

[245] R. Doc. 47.

[246] The Court will not allow Plaintiffs leave to amend their second amended complaint. Federal Rule of Civil Procedure 15(a) provides the Court should grant leave to amend freely when justice so requires. Leave to amend is not "automatic," but the Court must possess a "substantial reason" to deny leave to amend. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005). A court possesses a "substantial reason" when, for instance, a plaintiff has acted with "undue delay, bad faith or dilatory motive" in seeking leave to amend, the plaintiff has made "repeated failures to cure deficiencies by amendments previously allowed," "undue prejudice [will result] to the opposing party by virtue of allowance of the amendment," or the amendment would be completely futile. *Id.* The Court has allowed Plaintiffs to amend their complaint two times, yet they have still failed to cure deficiencies in their allegations. The Court will not grant Plaintiffs leave to amend their complaint a third time.