## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KAREN ROBERTS MIXON, ET AL.,**                    CIVIL ACTION
      **Plaintiffs**

**VERSUS**                                          NO.  20-1216

**JAMES POHLMANN, ET AL.,**                         SECTION: "E" (1)
      **Defendants**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by James Pohlmann ("Sheriff" or "Defendant"), in his official capacity as the Sheriff of St. Bernard Parish.[1] Karen Roberts Mixon and Lindsey Elaina Mixon (collectively, "Plaintiffs"), who are respectively the surviving spouse and sole heir of Edward Mixon, oppose Defendant's motion.[2] Defendant filed a reply in support.[3]

## BACKGROUND

The instant action arises from the death of Edward Mixon, pretrial detainee, while incarcerated in St. Bernard Parish Jail. Plaintiffs sue James Pohlmann in his official capacity as Sheriff of St. Bernard Parish for compensatory damages under 42 U.S.C. § 1983 for violations of Edward Mixon's Eighth and Fourteenth Amendment right to adequate medical care while detained pre-trial.[4]

---

[1] R. Doc. 91. At the time this motion was filed, the St. Bernard Parish Sheriff's Office ("SBPSO") was a defendant in this lawsuit. Defendant's motion challenged whether SBPSO was a proper party to the suit. *Id.* On July 6, 2022, the Court held a pretrial conference during which Plaintiffs conceded SBPSO cannot be sued. Accordingly, the Court dismissed SBPSO with prejudice, and the only remaining Defendant is the Sheriff in his official capacity as the Sheriff of St. Bernard Parish. R. Doc. 106. To the extent Defendant's motion for summary judgment is based on SBPSO not being a proper party, that aspect of the motion is denied as moot. Plaintiffs also have conceded their only remaining claims arise under 42 U.S.C. § 1983. *See* R. Doc. 76; *see also* R. Doc. 106. Thus, to the extent Defendant's motion for summary judgment is based on challenges to Plaintiffs' state law claims, that aspect of the motion also is denied as moot.
[2] R. Doc. 94.
[3] R. Doc. 101.
[4] *Id.* at ¶¶ 4, 55-71. The U.S. Supreme Court has held punitive damages are not available against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). As explained below, a suit

Plaintiffs initially filed their complaint on April 17, 2020.[5] On May 21, 2021, the Court granted Plaintiffs leave to file their first amended complaint adding CorrectHealth St. Bernard ("CHSB") and the Medical Personnel Defendants as Defendants.[6] CHSB and the Medical Personnel Defendants subsequently filed their first motion to dismiss for failure to state a claim.[7] The Court allowed Plaintiffs to file a second amended complaint to address the arguments made in the first motion to dismiss.[8] Plaintiffs filed their second amended complaint on August 18, 2021,[9] and the Court denied the first motion to dismiss without prejudice on August 24, 2021.[10] Thereafter, CHSB and the Medical Personnel Defendants' filed a second motion to dismiss,[11] which this Court granted on December 23, 2021, thereby dismissing CHSB and the Medical Personnel Defendants with prejudice.[12]

On March 16, 2022, a status conference was held with the Court, at which time Plaintiffs represented there are no pending claims against CorrectHealth Lafourche, LLC, and all claims against that entity were dismissed with prejudice. During the status conference, the Plaintiffs clarified there are no pending state law claims against any Defendant in this action, and that their only remaining claims arise under § 1983. Most recently, on July 6, 2022, during the parties' pretrial conference, the Court dismissed the St. Bernard Parish Sheriff's Office ("SBPSO") with prejudice when Plaintiffs conceded SBPSO is not a proper defendant.[13] As a result, the only remaining claims in this case arise

---

brought against Sheriff Pohlmann in his official capacity is treated as a suit against the municipality itself. Accordingly, Plaintiffs are not entitled to punitive damages in their remaining § 1983 claims against Sheriff Pohlmann in his official capacity as Sheriff of St. Bernard Parish. *See also* R. Doc. 68 at p. 36.

[5] R. Doc. 1.
[6] R. Doc. 20; *see also* R. Doc. 21 (first amended complaint).
[7] R. Doc. 28.
[8] R. Doc. 38.
[9] R. Doc. 39.
[10] R. Doc. 41.
[11] R. Doc. 46; *see also* R. Doc. 47.
[12] R. Doc. 68.
[13] R. Doc. 106.

under § 1983 against Sheriff James Pohlmann in his official capacity as Sheriff of St. Bernard Parish.

Under § 1983, a pretrial detainee may bring claims for an episodic act or omission, a failure to train or supervise, and conditions of confinement.[14] "There is no rule barring a plaintiff from pleading [these] alternative theories, and a court may properly evaluate each separately."[15] First, Plaintiffs in this case bring an episodic act or omission claim. Plaintiffs allege (1) Defendant, as well as other defendants, violated Mixon's clearly established constitutional rights to be "reasonably safe and secure while in detention," to have access to "reasonable and adequate medical care," to be free from "cruel and unusual punishment," and to "due process and equal protection of the laws;"[16]  (2) that this violation resulted from a *de facto* municipal policy;[17] and (3) the *de facto* policy was maintained with deliberate indifference.[18] Second, Plaintiffs bring a failure to train or supervise claim. They allege (1) Defendant failed to either supervise or train his subordinate officials as relates to withdrawal monitoring;[19] (2) a causal link exists between the failure to train or supervise and the violation of Mixon's rights;[20] and (3) the failure to train or supervise amounts to deliberate indifference.[21] Finally, Plaintiffs bring a condition of confinement claim. They allege (1) there is a *de facto* policy of Sheriff

---

[14] *Hare*, 74 F.3d at 644-45; *see also Elphage v. Gautreaux*, 969 F.Supp.2d 493, 511 (M.D. La. 2013) (Dick).

[15] *Martinez v. City of North Richland Hills*, 846 Fed.Appx. 238, 242 (5th Cir. 2021) (citing *Shepherd v. Dall. Cty.*, 591 F.3d 445, 452 n.1 (5th Cir. 2009); *see also* Rule 8 of the FED. R. CIV. PRO. ("A pleading . . . may include relief in the alternative or different types of relief.").

[16] R. Doc. 39 at ¶ 61.

[17] *See, e.g.*, *id.* at ¶ 60. Actions taken by individuals with final policymaking authority constitute a "municipal policy," and Plaintiffs contend Sheriff Pohlmann has final policymaking authority over the St. Bernard Parish Jail. In terms of the *de facto* policy, Plaintiffs Second Amended Complaint complains of Sheriff Pohlmann's policy of failing to provide adequate medical care to pretrial detainees in St. Bernard Parish Jail. It has become clear the specific inadequacy Plaintiffs' complain of is a *de facto* policy of failing to give detox medication until a pretrial detainee displays withdrawal symptoms.

[18] *See, e.g.*, *id.*

[19] *See, e.g.*, *id.* at ¶ 67.

[20] *See, e.g.*, *id.* at ¶ 70.

[21] *See, e.g.*, *id.*

Pohlmann—the jail policymaker—to fail to provide detox medication until a pretrial detainee displays withdrawal symptoms;[22] (2) there is no legitimate government interest advanced by the *de facto* policy,[23] and (3) that the *de facto* policy caused a deprivation of Mixon's constitutional rights.[24]

Defendant argues in his reply memorandum in support of the instant motion that Plaintiffs have not made a condition of confinement claim because the opposition is the first time Plaintiffs mentioned they were making such a claim.[25] However, as set forth above, the facts alleged in Plaintiffs' Second Amended Complaint clearly put Defendant on notice of a condition of confinement claim—a *de facto* policy, no legitimate government interest, and causation.

Under Federal Rule of Civil Procedure 8(e), "[p]leadings must be construed so as to do justice," and "particular situations may not require that the specific legal theory be identified," provided that "at least some notion of the grounds justifying the remedies sought in the proceedings . . . appear."[26] The latter requirement that "at least some notion" of the grounds exists is designed to ensure parties are given notice as to the claims brought so they may prepare a defense.[27]

Because Rule 8 is not "simply a precatory statement but reflects one of the basic philosophies of practice under the federal rules," federal courts must judge pleadings by

---

[22] *See, e.g.*, *id.* at ¶¶ 34, 43, 50, 54 (highlighting the jail-wide nature of the policy).

[23] *Id.* at ¶ 50 (Plaintiffs allege the existence of "widespread deficits in the systems implemented to provide urgent medical services to inmates at St. Bernard Parish Jail facing life-threatening emergencies evidence a custom and/or practice of withholding medication and medical treatment for serious medical conditions *in order to save money* . . . ." (emphasis added)).

[24] *Id.* at ¶ 61.

[25] R. Doc. 101.

[26] *See Ocaso, S.A., Compañia de Seguros y Reaseguros v. P.R. Mar. Shipping Auth.*, 915 F. Supp. 1244, 1253 (D.P.R. 1996).

[27] A. Benjamin Spencer, Fed. Prac. & Pro. § 1286 (4th ed. Wright & Miller). For the avoidance of doubt, the Court is not suggesting that "notice pleading" is sufficient to state a claim upon which relief can be granted under Rule 12(b)(6). The Court is, however, stating that Plaintiffs sufficiently put Defendant on notice of their condition of confinement claim, enabling Defendant to prepare a defense.

their substance, not their form.[28] Plaintiffs' Second Amended Complaint alleges, *inter alia*, a *de facto* jail-wide, or systemic, policy at the St. Bernard Parish Jail, which is the hallmark of a condition of confinement claim.[29] As such, judging Plaintiff's Second Amended Complaint by its substance, it may be said the pleading "at least implicate[s]" a conditions of confinement theory.[30] Just as Plaintiffs need not say the words "episodic act" in their Second Amended Complaint to bring an episodic acts claim,[31] they need not say the words "condition of confinement" to bring a condition of confinement claim. Accordingly, the Court is satisfied that Defendants were sufficiently put on notice that Plaintiffs were bringing such a claim because Plaintiffs' Second Amended Complaint alleges the basic elements of a condition of confinement claim.

Further, in the joint proposed pretrial order, Plaintiffs state "[t]here is a clear pattern at the St. Bernard Parish Prison of providing grossly inadequate healthcare to chronically ill inmates. This established custom has existed prior to contracting with . . . [CHSB] and continues to exist. . . . [T]here is no legitimate government interest for withholding adequate medical care . . ."[32] There was no objection by Defendant that by including this language Plaintiffs were attempting to expand the pleadings to include a condition of confinement claim.[33]

### **MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[28] *Id.*
[29] *See Duvall v. Dallas Cty., TX.*, 631 F.3d 203, 207.
[30] *Schott Motorcycle Supply v. Am. Honda Motor Co.*, 976 F.2d 58, 62 (1st Cir. 1992) (internal quotations omitted).
[31] *See generally* R. Doc. 39.
[32] R. Doc. 96 at p. 3.
[33] *See* R. Doc. 96.

of law."[34] "An issue is material if its resolution could affect the outcome of the action."[35] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[36] All reasonable inferences are drawn in favor of the non-moving party.[37] While all reasonable inferences must be drawn in favor of the non-moving party, the non-moving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[38] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[39]

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material fact may be presented in a form that would not, in itself, be admissible at trial."[40]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[41]  To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the

---

[34] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[35] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[36] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[37] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[38] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[39] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

[40] *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).

[41] *Celotex*, 477 U.S. at 323.

Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[42] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[43]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[44] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[45] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[46] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose

---

[42] *Id.* at 331.

[43] *Id.* at 322−24.

[44] *Id.* at 331−32 (Brennan, J., dissenting).

[45] *See id.* at 332.

[46] *Id.* at 332−33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332−33, 333 n.3.

upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[47]

## FACTS

### I.    Undisputed Facts

The following facts are undisputed. Plaintiffs bring the instant action against Sheriff James Pohlmann in his official capacity as the Sheriff of St. Bernard Parish.[48] St. Bernard Parish and CHSB are parties to a Health Services Agreement, whereby CHSB—acting as an independent contractor[49]—is responsible for providing all professional medical and mental healthcare to pretrial detainees and inmates.[50] The Health Services Agreement states that St. Bernard Parish is charged by law with the responsibility for obtaining and providing reasonably necessary medical care for pre-trial detainees and inmates in the St. Bernard Parish Jail.[51] The Agreement delineates in detail the broad scope of medical services provided by CHSB, including nursing services, provider services, medication administration, pharmaceuticals, and staff training.[52] This Agreement was in effect at the time of Edward Mixon's incarceration and ultimate death in custody.[53]

---

[47] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[48] R. Doc. 91-9 at ¶ 1; *see also* R. Doc. 94-6 at ¶ 1.

[49] R. Doc. 91-9 at ¶ 4; *see also* R. Doc. 94-6 at ¶ 4.

[50] R. Doc. 91-9 at ¶¶ 2-3, 6; *see also* R. Doc. 94-6 at ¶¶ 2-3, 6.

[51] R. Doc. 91-9 at ¶ 5; *see also* R. Doc. 94-6 at ¶ 5. Plaintiffs do not dispute the Health Services Agreement includes a provision that St. Bernard Parish is charged by law with the responsibility for obtaining and providing reasonably necessary medical care to pretrial detainees and inmates in the St. Bernard Parish Jail. R. Doc. 94-6 at ¶ 5. However, they contend the Sheriff, acting in his official capacity, regardless of the Parish's legal requirement to appoint an adequate physician, is still the final policymaker of the jail and has a duty to manage healthcare within the jail. *Id.*

[52] R. Doc. 91-9 at ¶ 7; *see also* R. Doc. 94-6 at ¶ 7.

[53] R. Doc. 91-9 at ¶ 2; *see also* R. Doc. 94-6 at ¶ 2.

Upon intake into the St. Bernard Parish Jail, CHSB is responsible for providing a health screening to detainees.[54] This health screening includes inquiry into the detainee's current medication regimen, drug and alcohol use, and the possible need for detox treatment.[55] CHSB is responsible for administering pharmaceuticals,[56] and for the staffing, supervision, training, policies, and procedures of its own personnel located at the St. Bernard Parish Jail.[57]

## II.    Disputed Facts

Plaintiffs argue Defendant's motion for summary judgment should be denied because there are disputed issues of material facts. First, Plaintiffs contend as a matter of law[58] the Sheriff is the final policymaker when it comes to the management of healthcare within the jail—CHSB is merely a contracted medical provider.[59] Defendant disputes this, contending CHSB is, in effect, the final policymaker as to the management of healthcare in St. Bernard Parish Jail.[60] Second, Plaintiffs contend the Sheriff retains responsibility to ensure adequate healthcare is provided to inmates in the jail, i.e., to monitor the adequacy of the care provided by CHSB.[61] Defendant contends CHSB has the sole responsibility to ensure adequate healthcare is provided to inmates or, in the alternative, that the Parish has the responsibility for obtaining and providing reasonably necessary medical care to detainees and inmates.[62] Finally, Plaintiffs contend, pursuant to the Sheriff's policies and procedures, employees of the Sheriff may monitor and evaluate

---

[54] R. Doc. 91-9 at ¶ 9; *see also* R. Doc. 94-6 at ¶ 9.
[55] *Id.*
[56] R. Doc. 91-9 at ¶ 10; *see also* R. Doc. 94-6 at ¶ 10.
[57] R. Doc. 91-9 at ¶¶ 11, 16; *see also* R. Doc. 94-6 at ¶¶ 11, 16.
[58] Plaintiffs and Defendant pose this as a factual issue. However, as explained below, the determination of who the final policymaker is as to the provision of healthcare in St. Bernard Parish Jail is a matter of Louisiana law. Accordingly, it is a legal issue.
[59] R. Doc. 94-6 at ¶¶ 5, 15.
[60] R. Doc. 91-1 at ¶¶ 11, 12.
[61] R. Doc. 94-6 at ¶ 8.
[62] R. Doc. 91-1 at ¶¶ 5, 8-15.

pretrial detainees' medical needs and the delivery of care.[63] Defendant contends CHSB has the sole responsibility for all final medical judgments relating to inmate healthcare in the jail.[64] Plaintiffs argue these disputed facts are material and, thus, sufficient to prevent summary judgment in Defendant's favor.

## LAW AND ANALYSIS

### I.   Defendant's motion for summary judgment as to Plaintiffs' municipal liability claims against Sheriff Pohlmann is denied.

"To state a claim under § 1983, a plaintiff must . . . show[] that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the Constitution or the laws of the United States."[65] In terms of the rights owed to pretrial detainees, those rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment" of the U.S. Constitution.[66] "Since the state *does* punish convicted prisoners, but *cannot* punish pretrial detainees, a pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"[67] As a result, under the Fourteenth Amendment, the state owes "pretrial detainees . . . [a duty to provide] basic human needs, including medical care and protection from harm."[68] The Court determines the legal standard used to measure the procedural or substantive due process rights of pretrial detainees based on whether the detainee challenges the constitutionality of a "condition of confinement," whether the detainee claims a failure to supervise or train, or whether

---

[63] R. Doc. 94-6 at ¶¶ 12-14.
[64] R. Doc. 91-1 at ¶¶ 16.
[65] *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010).
[66] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).
[67] *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 (1983)) (emphasis in original).
[68] *Hare*, 74 F.3d at 650; *see* U.S. CONST. amend. XIV; *City of Revere*, 463 U.S. at 244.

the detainee challenges an "episodic act or omission" of an individual government official.[69]

When a plaintiff brings an episodic act or omission claim, a condition of confinement claim, or a failure to train or supervise claim against an official in his or her official capacity, it is as though the plaintiff is suing the municipality of which the official is an agent directly.[70] This is referred to as municipal liability or a *Monell* claim. A municipality is treated as a person that may be held liable under § 1983 when execution of a government's policy or custom, whether made by its lawmakers or by those whose edits or acts may fairly be said to represent official policy, inflicts constitutional injury.[71] This means actions taken by individuals with final policymaking authority constitute a "municipal policy" actionable under § 1983.[72] Courts and commentators have observed a significant overlap between the elements of episodic act or omission, condition of confinement, failure to train or supervise claims and the elements of municipal liability.[73]

Municipal liability under § 1983 requires proof of three elements: a policymaker; an official policy or custom that was the moving force of the pretrial detainee's constitutional deprivation; and deliberate indifference.[74] These three elements are consistent with the Fifth Circuit's added "requirement that a plaintiff [show] either an unconstitutional official policy or a facially innocuous one 'promulgated with deliberate

---

[69] *Hare*, 74 F.3d at 644-45; *see also Elphage v. Gautreaux*, 969 F.Supp.2d 493, 511 (M.D. La. 2013) (Dick).
[70] *Elphage*, 969 F.Supp.2d at 511.
[71] *Id.*
[72] *Id.*
[73] Vincent R. Fontana, Municipal Liability: Law & Practice (4th ed.).
[74] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Plaintiffs need not prove deliberate difference at trial on their condition of confinement claim because a jail official's intent to subject a pretrial detainee to inhumane conditions of confinement or abusive jail practices is presumed when he or she incarcerates the detainee in the face of such known conditions and practices. The Fifth Circuit, sitting *en banc*, has adopted the standard set by the United States Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979). *See Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996); *see also Duvall v. Dallas Cty., TX.*, 631 F.3d 203 (5th Cir. 2011).

indifference to the "known or obvious consequences" that constitutional violations would result.'"[75] "Proof of these three elements is necessary 'to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.'"[76] Defendant's instant motion for summary judgment argues "Plaintiffs have not alleged nor presented sufficient summary judgment evidence to prove any elements necessary to prevail on a claim against Sheriff Pohlmann, namely, a policymaker, an official policy and a violation of constitutional rights whose moving force is the policy or custom."[77] Defendant also argues Plaintiffs are unable to prove deliberate indifference because "[the] Court has already held that none of th[e] allegations made by plaintiffs support[] claims of deliberate indifference."[78] At this stage, Plaintiffs are not required to prove each element of municipal liability, but may instead show facts are in dispute that would prevent the Court from entering summary judgment.

### A.  As a matter of law, Sheriff Pohlmann is the final policymaker as to the provision of medical care in St. Bernard Parish Jail.

To determine whether a municipality may be liable for a policy or custom of a government official, the Court must, as a threshold matter, determine whether Sheriff Pohlmann is the policymaker for the municipality in the area at issue.[79] The parties dispute whether Sheriff Pohlmann is the final policymaker as to the provision of medical care in St. Bernard Parish Jail. The determination of whether the Sheriff is a final policymaker is a matter of Louisiana state law.[80]

---

[75] *Quatroy v. Jefferson Parish Sheriff's Office*, 2009 WL 1380196 *7 (E.D. La. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2009)).

[76] *Id*. at *4 (citing *Piotrowski*, 237 F.3d at 578).

[77] R. Doc. 91-1 at p. 12.

[78] *Id*. at p. 11.

[79] *McMillian v. Monroe County*, 520 U.S. 781, 786 (1998) ("[o]ur cases on the liability of local government under § 1983 instruct us to ask whether government official are final policymakers for the local government in a particular area, or on a particular issue").

[80] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999).

Under La. R.S. 15:703, the governing authority of St. Bernard Parish has a legal duty to either appoint a physician to care for inmates and detainees "confined in [its] jails" or to enter into a contract with a healthcare provider to "to provide requisite health care services."[81] St. Bernard Parish's governing authority opted to fulfill its duty under La. R.S. 15:703 by contracting CHSB to provide requisite health care services to inmates and detainees as the St. Bernard Parish Jail.[82]

Separate and apart from the governing authority of St. Bernard Parish's legal duties that arise from La. R.S. 15:703 is the Sheriff's duty—derived from the Louisiana Constitution—of operating the St. Bernard Parish Jail and ensuring the safety and well-being of the people they detain.[83] After all, Sheriffs are the "keeper[s] of the public jail" and the managing authority for the functioning of the jail they run, and, "[u]nder Louisiana law, a sheriff is 'virtually an autonomous local government official.'"[84]

Plaintiffs contend Sheriff Pohlmann is the final policymaker as to the provision of medical care for § 1983 municipal liability purposes. Defendant asserts "Sheriff Pohlmann is not the policymaker of the St. Bernard Parish Prison as to the provision of medical care and treatment"—instead, Defendant argues, CHSB is on account of its contractual relationship with the Parish.[85] Defendant points to the Health Services Agreement between St. Bernard Parish and CHSB, whereby CHSB is contracted by the Parish to actually render medical and mental health care to inmates and detainees.[86]

---

[81] LA. R.S. 15:703.
[82] R. Doc. 91-9 at ¶ 5 (Defendant's statement of uncontested material facts); *see also* R. Doc. 94-6 at ¶ 5 (Plaintiffs' response).
[83] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 613 (E.D. La. 1998) (citing LA. CONST. art. 5 § 27); *see also Amiss v. Dumas*, 411 So.2d 1137, 1441 (La. Ct. App. 1982).
[84] *Id.*
[85] R. Doc. 91-1 at p. 5.
[86] *Id.*

It is clear under Louisiana law that the Sheriff is the final policymaker for § 1983 municipal liability purposes. At the heart of Defendant's argument is an assertion that the Parish's fulfillment of its duty under La. R.S. 15:703 (entering into a Health Services Agreement with CHSB) somehow relieves the Sheriff of his constitutional and statutory duty to ensure the safety and well-being of inmates and pretrial detainees.[87] Defendant argues the Sheriff shielded himself from § 1983 municipal liability by the contractual relationship that exists between the Parish and CHSB.[88] Defendant's contention is supported by neither the relevant caselaw nor Louisiana law.

In *Quatroy v. Jefferson Parish Sheriff's Office*, the family of a deceased inmate brought a § 1983 municipal liability claim against Newell Normand in his official capacity as the Sheriff of Jefferson Parish.[89] The pretrial detainee was a known drug user.[90] Despite this knowledge, the pretrial detainee was not provided sufficient medical care, resulting in his death.[91] On the issue of whether Sheriff Normand was a policymaker, Judge Vance recognized that "Court[s] [must] look to Louisiana law to ascertain the extent of the Sheriff's policy-making authority."[92] Faced with an argument by the defendant that "the Sheriff was not the official source of policies relating to the healthcare of inmates" because of the Parish's responsibility to appoint a jail doctor or contract with a healthcare provider,[93] the court parsed through the responsibilities of the Sheriff versus the parish governing authority. In terms of the Sheriff, under La. R.S. 15:704 and article 5 § 27 of the Louisiana Constitution, the Sheriff is the keeper of the public jail of his or her

---

[87] *Id.*
[88] *Id.*
[89] 2009 WL 1380196 *1 (E.D. La. 2009).
[90] *Id.*
[91] *Id.*
[92] *Id.* at * 4.
[93] *Id.*

parish.[94] "Courts have recognized . . . sheriffs are the final policymakers when it comes to the management of jails," the Sheriff is charged with the jail's administration, and the Sheriff has the power to "by all lawful means preserve the peace and apprehend all disturbers thereof."[95] The parish governing authority, on the other hand, is responsible for either appointing a jail physician or contracting with a healthcare provider to provide medical services for detainees and inmates.[96] Recognizing the shared responsibility for the medical treatment of detainees and inmates, the Court held "despite the parish's authority to choose the jail's healthcare provider, the Sheriff is the final policymaker when it comes to dealing with inmates suffering [from] withdrawal *within the jail*"[97] because "Louisiana law makes the Sheriff the relevant policymaker in this regard."[98]

More recently, in *Belcher v. Lopinto*, the court was faced with, among other issues, a § 1983 municipal liability claim against Newell Normand and Joseph Lopinto in their official capacities as current and former Sheriffs of Jefferson Parish following the suicide death of a pretrial detainee at the Jefferson Parish Correctional Center.[99] In *Belcher*, the governing authority of Jefferson Parish satisfied its legal duty under La. R.S. 15:703 by contracting CorrectHealth Jefferson, LLC to provide medical and mental care to inmates and detainees.[100] Even though this contractual relationship existed, as to the policymaker element of a municipal liability claim, the *Belcher* court concluded "Sheriffs Normand and Lopinto in their official capacities . . . [were] 'policymakers' for purposes of § 1983

---

[94] *Id*. at *5.
[95] *Id*.
[96] *Id*. ("The parish authority is generally not liable for the action or inaction of a physician or healthcare provider. But the parish authority may be liable if it exercises 'gross negligence of willful misconduct in the performance of its duties and obligations imposed by [La. R.S. 15:703]' and that gross negligence of willful misconduct is a 'substantial factor' in causing a prisoner's injury.").
[97] *Id*. (emphasis in original).
[98] *Id*. at *6.
[99] 492 F.Supp.3d 636, 644 (E.D. La. 2020).
[100] *Id*.

liability" because "Sheriffs are the keepers of parish jails and final policymakers with respect to jail management" under Louisiana law.[101]

The Court agrees with the analyses in *Quatroy* and *Belcher* and finds Defendant Sheriff Pohlmann is a relevant policymaker regarding Plaintiffs' municipal liability claims. The mere fact that a contractual relationship exists between St. Bernard Parish and CHSB does not change this legal reality. This result is consistent with Louisiana law, *Quatroy*, and *Belcher*. Accordingly, Defendant has not shown Plaintiffs will be unable to establish the "policymaker" element of their *Monell* claim at trial. Rather, the Court has concluded, as a matter of law, Sheriff Pohlmann is the final policymaker as to the provision of medical care for § 1983 municipal liability purposes.

At trial, Plaintiffs will be able to establish as a matter of law that Sheriff Pohlmann was the final policymaker of St. Bernard Parish Jail. Defendant may still prevail on summary judgment as to this claim if he establishes there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law as to the second and third elements of municipal liability.

**B.    A factual dispute exists as to whether there was a policy or custom of Sheriff Pohlmann that caused Mixon's constitutional deprivation.**

In terms of the second element, Plaintiffs will have the burden at trial of proving by a preponderance of the evidence that (1) a policy of Sheriff Pohlmann existed and (2) that policy was the moving force of Mixon's constitutional deprivation.[102]

Plaintiffs contend the Sheriff had a *de facto* policy, *inter alia*, of failing to provide medical treatment to pretrial detainees until they display withdrawal symptoms. In

---

[101] *Id.* at 658; *see* La. R.S. 15:704 ("[e]ach sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders.").
[102] *Monell*, 436 U.S. at 694.

support of summary judgment on the second element of municipal liability, Defendant argues, in substance, because CHSB is the official policymaker as to the provision of medical care, the policies Plaintiffs complain of are that of CHSB's, not the Sheriff's.[103] This basis for summary judgment lacks merit for two reasons. First, the Court has already held Sheriff Pohlmann is an official policymaker as to the provision of medical care. Given that Defendant's ground for summary judgment as to the second element of municipal liability is predicated on the Court finding the Sheriff is not a policymaker, this argument fails.

Second, Defendant's motion overlooks the varying judicially recognized avenues at Plaintiffs' disposal to prove that a policy of Sheriff Pohlmann was the moving force behind, or direct result of, Mixon's constitutional deprivation. One way to satisfy the second element of municipal liability is by pointing to actual policy contained in officially promulgated policy statements, ordinances, or regulations.[104] Additionally, and more commonly, there may be a "custom" that gives rise to a *de facto* policy of the Sheriff.[105] A custom is a practice that is well-settled and widespread or pervasive.[106] Notably, a custom may develop from the bottom-up, as opposed to top-down.[107] That bottom-up custom can yield a *de facto* policy of the Sheriff provided he had actual or constructive knowledge of the custom or practice and he acquiesced in it. [108] A custom also may flow from the top-down, meaning the Sheriff may establish a *de facto* policy that permeates throughout the

---

[103] R. Doc. 91-1 at p. 10.
[104] *Burge*, 187 F.3d at 471.
[105] *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002); *see also Quatroy*, 2009 WL 1380196 at *6.
[106] *Lawson*, 286 at 263; *see also Quatroy*, 2009 WL 1380196 at *6.
[107] *Britton v. Maloney*, 901 F. Supp. 444, 450 (D. Mass. 1995).
[108] *Id.*

jail.[109] Either way, the element would be satisfied for § 1983 municipal liability purposes. The *de facto* policy may fly in the face of official policies "on the books."

The existence of a policy is an essential element of Plaintiffs' claim. To satisfy his summary judgment burden, Defendant could have submitted evidence affirmatively negating the existence of a bottom-up or top-down *de facto* policy. Since Defendant did not submit evidence actually negating this element,[110] the only other way he could have carried his summary judgment burden was by affirmatively showing the absence of evidence in the record to support Plaintiffs' contention that there was a *de facto* policy. "[An affirmative] 'showing' [requires] more than a conclusory allegation."[111] This means "the party moving for summary judgment cannot sustain its burden . . . merely by asserting that the nonmovant lacks evidence to support its claim."[112] In the case at bar, Defendant, citing to nothing, states in the instant motion that "plaintiffs have not presented evidence of any policy or custom of Sheriff Pohlmann that violated the constitutional rights of Edward Mixon."[113] That kind of conclusory allegation is the quintessential example of a moving party failing to meet the "affirmative showing" requirement of Rule 56.[114] Because Defendant did not make his Rule 56 "showing," the burden did not shift to Plaintiffs "to call evidence to the attention of the court to dispute"

---

[109] *Id.*

[110] Defendant's attach as exhibits the Health Services Agreement between St. Bernard Parish, policies of St. Bernard Parish, and the deposition transcript of a St. Bernard Parish Warden. However, the only exhibit Defendant cites to in the section of his memorandum titled "PLAINTIFFS HAVE FAILED TO ESTABLISH ANY POLICY OF SHERIFF POHLMANN THAT WAS THE MOVING FORCE OF A VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS" is the Health Services Agreement between the Parish and CHSB. R. Doc. 91-1 at p. 10. Defendant cites the Agreement to support the proposition that CHSB is responsible for providing all professional medical and mental healthcare services to pretrial detainees and inmates. *Id.* This fact is uncontested. R. Doc. 91-9 at ¶¶ 2-3, 6; *see also* R. Doc. 94-6 at ¶¶ 2-3, 6. However, the Court has already determined this fact does not negate an essential element of Plaintiffs' claims for municipal liability.

[111] *Young v. Universal Services, Inc.*, 1989 WL 111615 (E.D. La. 1989).

[112] A. Benjamin Spencer, Fed. Prac. & Pro. § 2727.1 (4th ed. Wright & Miller) (citing cases).

[113] R. Doc. 91-1 at p. 10.

[114] Fed. R. Civ. Pro. 56.

the contention that no evidence exists to establish an element of their claim.[115] Accordingly, Defendant has not carried his burden of demonstrating there is no evidence to support this element of Plaintiffs' claim.

### C.     A factual dispute exists as to the third element of municipal liability: deliberate indifference.

Plaintiffs contend the Sheriff had a *de facto* policy, *inter alia*, of failing to provide medical treatment to pretrial detainees until they display withdrawal symptoms. To prevail on the third element, at trial Plaintiffs will have the burden of showing Sheriff Pohlmann maintained his *de facto* policy with deliberate indifference to the constitutional rights of Mixon.[116] Because Plaintiffs will have the burden at trial of proving Sheriff Pohlmann maintained a *de facto* policy with deliberate indifference, Defendant has the burden on summary judgment of either (1) submitting affirmative evidence that negates this essential element of the Plaintiff's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish deliberate indifference.[117] If Defendant is successful, it is said "the burden shifts to [the non-moving party] to call evidence to the attention of the court," either by pointing to evidence in the record that was ignored or by submitting new evidence, to dispute the contention that no genuine dispute of material fact exists.[118]

Defendant attempts to carry his summary judgment burden by arguing Sheriff Pohlmann could not be found to be deliberately indifferent because the Court previously held CHSB and its agents were not deliberately indifferent to Mixon's medical needs.[119] Defendant further agues, with no citation to the record, that "[t]he exact same allegations

---

[115] A. BENJAMIN SPENCER, FED. PRAC. & PRO. § 2727.1 (4TH ED. WRIGHT & MILLER).
[116] *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999).
[117] *Celotex*, 477 U.S. at 325; *see also Celotex*, 477 U.S. at 331–32 (Brennan, J., dissenting).
[118] A. BENJAMIN SPENCER, FED. PRAC. & PRO. § 2727.1 (4TH ED. WRIGHT & MILLER).
[119] *Id.* at p. 11.

that plaintiffs had made against CorrectHealth for deliberate indifference to plaintiff's serious medical needs have also been made against Sheriff Pohlmann."[120] According to Defendant, then, "those same allegations cannot support claims of deliberate indifference on the part of Sheriff Pohlmann."[121] In sum, Defendant Sheriff Pohlmann argues if CHSB was not deliberately indifferent, he was not either.[122] This is the extent of Defendant's grounds and explanation as to why Plaintiffs are unable to establish Sheriff Pohlmann acted with deliberate indifference.

The Court's December 23, 2021 Order and Reasons dismissing CHSB did not address whether Sheriff Pohlmann acted with deliberate indifference by maintaining a *de facto* policy of failing to provide detox medication to pretrial detainees before they show withdrawal symptoms.[123] Rather, the Court's Order and Reasons addressed, among other issues, the individual episodic acts or omissions of CHSB employees.[124] The Court went through each individual defendant's acts and analyzed whether Plaintiffs had sufficiently stated a claim of deliberate indifference. Because Sheriff Pohlmann did not move the Court to dismiss the claims brought against him at the 12(b)(6) stage, the extent to which the Court mentioned the claims against Sheriff Pohlmann in its Order and Reasons was limited to an acknowledgment that he also was a Defendant.[125] Courts must examine each defendant individually to determine whether deliberate indifference exists.[126] Accordingly, absent something more,[127] the Court cannot conclude its finding at the

---

[120] *Id.*
[121] *Id.*
[122] *Id.*
[123] R. Doc. 68.
[124] *Id.*
[125] *Id.*
[126] *Id.* at p. 13 (noting that courts must examine each defendant individually; citing to U.S. Fifth Circuit precedent).
[127] A careful review of Defendant's statement of uncontested material facts offers the Court no additional support for Defendant's contention that there is no genuine dispute as to any material fact because the document does not even include the words "deliberate indifference." *See* R. Doc. 91-9.

12(b)(6) stage as to the deliberate indifference of CHSB employees *ipso facto* means Sheriff Pohlmann was not deliberately indifferent in maintaining a *de facto* policy of failing to provide detox medications to pretrial detainees who do not display withdrawal symptoms. These are two separate inquiries.[128] As a result, Defendant has not carried his summary judgment burden of showing no factual dispute exists as to the third element of municipal liability—deliberate indifference—by merely pointing to the Court's December 23, 2021 Order and Reasons.

<u>**CONCLUSION**</u>

**IT IS ORDERED** that Defendant's motion for summary judgment (R. Doc. 91) is **DENIED**.

New Orleans, Louisiana, this 25th day of July, 2022.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[128] R. Doc. 68 at p. 13.